## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| In re: | ) | **Case No.: 22-70777** |
| | ) | |
| **STAUNTON AREA AMBULANCE** | ) | **Honorable Mary P. Gorman** |
| **SERVICE,** | ) | **Chapter 11 Proceeding** |
| | ) | |
| Debtor. | ) | |

## FIRST COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN OF REORGANIZATION FOR STAUNTON AREA AMBULANCE SERVICE DATED JULY 19, 2023

## ARTICLE I
## INTRODUCTION

This is the First Combined Disclosure Statement and Plan of Reorganization in the Chapter 11 Case of Debtor Staunton Area Ambulance Service (the "Plan").[1]

Pursuant to the Plan, Debtor Staunton Area Ambulance Service ("Debtor") proposes to pay its Creditors, after confirmation and the Effective Date of the Plan, from a combination of monies that Debtor has accumulated during this Chapter 11 Case and future income received by Debtor for five (5) years following the Effective Date of the Plan unless otherwise provided herein.

Debtor submits this Plan to all of its Creditors in order to comply with provisions of the Bankruptcy Code requiring information substantially similar to a disclosure statement and submission of information necessary for Creditors to arrive at an informed decision in exercising their right to vote for acceptance or rejection of the Plan.

This Plan provides detailed information regarding the terms for payment of Claims and other information designed to assist Creditors and equity security holders in determining whether to vote to accept the Plan. The information in this Plan was provided by Debtor and has not been audited, compiled, or otherwise reviewed by any third party. To that end, Debtor specifically disclaims any liability for unintentional errors and inadvertent inaccuracies contained in this Plan.

---

[1] All capitalized terms in the Plan shall, unless otherwise defined herein, have the meanings ascribed to them in Article II of the Plan and the Code.

This Plan provides for one class of Secured Claims; one Class of Priority Claims; one Class of Unsecured Claims; and one Class of Allowed Interests.  This Plan also provides for the payment of Administrative Expense Claims and Priority Tax Claims.

All Creditors should refer to Article IV of this Plan for information regarding the precise treatment of their Claims.

**YOUR RIGHTS MAY BE AFFECTED. YOU SHOULD READ THESE PAPERS CAREFULLY AND DISCUSS THEM WITH YOUR ATTORNEY, IF YOU HAVE ONE. IF YOU DO NOT HAVE AN ATTORNEY, YOU MAY WISH TO CONSULT ONE TO DETERMINE AND EVALUATE YOUR RIGHTS UNDER THIS PLAN.**

A.    **Purpose of this Document.** The Plan describes: (i) historical information regarding Debtor and the events leading to the Case and significant events during the Case; (ii) how the Plan proposes to treat Claims of Creditors, i.e. what you will receive on your Claim if the Plan is confirmed and how issues on the allowance of Claims will be addressed; (iii) how Debtor will put the Plan into effect, why Debtor believes that the Plan is feasible, and how the treatment of your Claim under the Plan compares to what you would receive in a bankruptcy liquidation; (iv) who can vote on or object to the Plan; (v) what factors the Bankruptcy Court will consider when deciding whether to confirm the Plan; and (vi) the effect of confirmation of the Plan.

B.    **Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing.** The Court has not approved the adequacy of the information in the Plan. Circulation of the Plan to you should not be deemed tantamount to the Court's approval of the Plan. This section describes the procedures under which the Plan will or will not be confirmed.

    1.    **Time and Place of the Hearing to Confirm the Plan/Approve Adequacy of Information in the Plan.** The Court will conduct the hearing on confirmation of the Plan and final approval of the adequacy of the information in the Plan on _____ at __:00 a.m. in the United States Bankruptcy Court for the Eastern District of Missouri, 111 S 10th St, St. Louis, MO 63102.

    2.    **Deadline for Voting to Accept or Reject the Plan.** If you are entitled to vote to accept or reject the Plan, vote on the enclosed Ballot and return the Ballot in the enclosed envelope via U.S. Mail, overnight, electronic mail, or hand delivery to Robert E. Eggmann, Thomas H. Riske, Carmody MacDonald, P.C., 120 South Central Ave., Suite 1800 St. Louis, Missouri 63105. Your Ballot must be <u>received</u> by **5:00 p.m. prevailing Central Time** on _____, or it will not be counted. See Article VIII below for a discussion of voting eligibility requirements,

    3.    **Deadline for Objecting to the Adequacy of the Information in the Plan and Confirmation of the Plan.** Objections to the adequacy of the information in the Plan and/or to confirmation of the Plan must be filed with the Court and served upon Robert E. Eggmann, Thomas H. Riske, Carmody MacDonald, P.C., 120 South Central Ave., Suite 1800, St. Louis, Missouri 63105 on or before _____.

4.    **Identity of Person to Contact for More Information.** If you want additional information about the Plan, you should contact Thomas Riske, Carmody MacDonald, P.C., 120 South Central Ave., Suite 1800, St. Louis, Missouri 63105, (314) 854-8600 either in writing or by telephone. Keep in mind, Mr. Riske cannot give you legal advice or assist you in determining how to vote on the Plan.

# ARTICLE II
## GENERAL PROVISIONS

A.    **Definitions and Rules of Construction.** The definitions and rules of construction stated in Code §§101 and 102 apply when terms defined or construed in the Code are used in this Plan, and they are supplemented by the following definitions:

1.    **Administrative Expense Claim** shall mean a Claim against Debtor for costs or expenses of administration of Debtor's Estate under Code §§ 503(b) and 507(b), including, but not limited to, the actual and necessary expenses incurred on or after the Petition Date of preserving Debtor's Estate and operating the business of Debtor, including, but not limited to, compensation and reimbursement awarded to professionals under Code § 330.

2.    **Allowed** as used in reference to a Claim, shall mean any Claim, that (a)(i) was filed on or before the Bar Date, or (ii) was or hereafter is scheduled by Debtor as both (x) liquidated, and (y) neither disputed nor contingent, and (b)(i) is not subject to any objections in the Bankruptcy Court, (ii) is not subject to any requirement for application and approval by the Bankruptcy Court, and (ii) as to which any application or objection has been determined by a Final Order and (c) is allowed pursuant to provisions of the Plan. In no event shall a Claim be deemed Allowed if such Claim has been objected to or is objected to after entry of the Confirmation Order unless or until such Claim has been determined by a Final Order of the Bankruptcy Court. Unless otherwise specified, no Allowed Claim shall include interest on the principal amount of such Claim from and after the Petition Date, late fees, attorneys' fees, Court costs or other costs, or other charges.

3.    **Asset** shall mean all of the rights, title, and interests of a Debtor in and to property of whatever type or nature, including, without limitation, real, personal, mixed, intellectual, tangible, and intangible property.

3.    **Ballot** means the form or forms distributed to holders of Impaired Claims entitled to vote on the Plan on which is to be indicated the acceptance or rejection of the Plan.

4.    **Bankruptcy Code** or **Code** shall mean Code §§ 101-1550, effective as of the Petition Date.

5.    **Bankruptcy Court** shall mean the United States Bankruptcy Court for the Eastern District of Missouri, in which the Case is pending.

6.  **Bank of Springfield Collateral** shall mean all assets pledged as security to Bank of Springfield, which includes a blanket lien on substantially all of Debtor's assets.

7.  **Bank of Springfield Capital Loan** shall mean the loan agreement as between the Debtor and Bank of Springfield in the principal amount of $199,570.00 bearing the Loan number 1928765636 with a present maturity date of 1-05-2024.

8.  **Bankruptcy Rules** shall mean the Federal Rules of Bankruptcy Procedure adopted by the Supreme Court of the United States, as amended from time to time.

9.  **Bar Date** shall mean the deadlines established for the filing of Claims in the Case pursuant to an Order of the Bankruptcy Court, the Code or applicable law.

10. **Business Day** shall mean a day other than a Saturday, Sunday, federal holiday, or other day on which banks are authorized or required to close in the State of Missouri

11. **Case** shall mean that certain Chapter 11 bankruptcy case captioned *In re Staunton Area Ambulance Service,* presently pending before the Bankruptcy Court as case number 22-70777.

12. **Cash** shall mean the legal currency of the United States and equivalents thereof.

13. **Chapter 11** shall mean Chapter 11 of the Bankruptcy Code.

14. **Claim** shall mean (a) any right to payment from Debtor, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, unsecured, pre-petition or post-petition; or (b) any right to an equitable remedy for breach of performance if such breach gives rise to a right to payment from Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, unsecured, pre-petition or post-petition.

15. **Claimant** shall mean any Person who has a Claim against Debtor.

16. **Class** shall mean Class 1, 2, 3, and 4 as described in Article **IV** of this Plan.

17. **Confirmation Date** shall mean the date on which the Confirmation Order is entered by the Clerk of the Bankruptcy Court on the docket for the Case.

18. **Confirmation Order** shall mean the Final Order entered by the Bankruptcy Court confirming the Plan pursuant to Code § 1129.

19. **Court** shall mean (a) the Bankruptcy Court, (b) any Court having jurisdiction to hear appeals or certiorari proceedings therefrom, and (c) any other federal or state Court having jurisdiction over matters addressed in or related to this Plan.

20. **Creditor** shall mean a Person that held a Claim against Debtor that arose on or before the Petition Date or a Claim against the Estate of any kind specified in Code §§ 502(g), 502(h), or 502(i).

{23343/00000/3658020.DOCX.}

21.   **Debtor** shall mean Staunton Area Ambulance Service.

22.   **Disbursing Agent** shall mean the person to be designated and retained, as of the Effective Date with approval of the Bankruptcy Court, as the fiduciary responsible for, among other things, holding and distributing the security and certain consideration to be distributed to the holders of Allowed Claims pursuant to Article VII of the Plan, the Confirmation Order, or such other order as may be entered by the Bankruptcy Court.

23.   **Disputed Claim** shall mean a Claim against Debtor that is not an Allowed Claim and as to which there is no Final Order disallowing such Claim.

24.   **Distribution** shall mean the Cash and other consideration distributed by Debtor under the Plan from time to time.

25.   **Distribution Account** shall mean a checking account at an FDIC banking institution from which Debtor or a distributing agent will make Distributions.

26.   **Effective Date** shall mean the first Business Day following the day that the Confirmation Order becomes a Final Order.

27.   **Estate** shall mean the estate created upon the commencement of the Case pursuant to Code §§ 541(a) and 1115.

28.   **Estate Property** shall mean all of the property of the Estate.

29.   **Excess Monthly Income** shall mean the Debtor's total monthly income earned from and after the Effective Date through the end of the term of this Plan, less a reserve for business expenses and required withholdings, payments for taxes and living expenses, including payments on Claims assessed against the Estate for Secured Claims, Administrative Expense Claims, Priority Tax Claims, and other Claims entitled to priority under Code § 507(a).

30.   **Final Order** shall mean an order or judgment of a Court, as entered by the clerk of such Court on a docket related to the Case, as to which; (a) the time for any appeal or petition for review has expired and no appeal or petition for review is pending or timely was filed, or (b) any appeal or petition for review finally has been determined or dismissed.

31.   **General Unsecured Claim** shall mean a Claim, other than (a) a Secured Claim, (b) an Administrative Expense Claim, (c) a Priority Claim, (d) a Priority Tax Claim, or (e) a Convenience Claim.

32.   **Governmental Unit** shall have the meaning ascribed in Code §101(27). Governmental Unit includes the United States; State; Commonwealth; District; Territory; municipality; foreign state; department, agency or instrumentality of the United States (but not a United States trustee while serving in a case under the Code), a State, a Commonwealth, a District, a Territory, a municipality, or a foreign state; or other foreign or domestic government.

33.   **Impaired** shall have the meaning ascribed to it in Article VIII of Plan.

34.   **Petition Date** shall mean November 21, 2022, the date upon which Debtor filed the Case with the Bankruptcy Court.

35.   **Person** shall mean an individual, corporation, limited liability company, limited or general partnership, joint stock company, joint venture, trust, estate, incorporated association or organization, and/or other entity, but does not include a Governmental Unit other than as stated in Code § 101(41)(A-C).

36.   **Plan** shall mean this Chapter 11 Plan of Reorganization for Staunton Area Ambulance Service dated July 19, 2023 in its present form and as it may be further amended or modified from time to time in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the provisions contained herein.

37.   **Plan Period** shall mean the five (5) year period immediately following the Effective Date.

38.   **Priority Claim** shall mean a Claim that arises under Code § 507(a), other than an Administrative Expense Claim or a Priority Tax Claim.

39.   **Priority Tax Claim** shall mean a Claim of a Governmental Unit against Debtor of the kind entitled to priority under Code § 507(a)(8), including, to the extent entitled to priority under Code § 507(a)(8), those Claims that are assessed post-Effective Date for the prepetition period.

40.   **Proof of Claim** shall mean a Claim asserted by a Claimant in writing and filed with the Bankruptcy Court.

41.   **Pro Rata** shall mean the proportion that an Allowed Claim in a Class bears to the aggregate amount of all Allowed Claims in such Class. To the extent that one or more Disputed Claims exists in such Class, pro *rata* shall mean the same proportion that an Allowed Claim in a particular Class bears to the aggregate amount of the sum of all Allowed Claims and all Disputed Claims in such Class until all such Disputed Claims become Allowed Claims or are disallowed or withdrawn.

42.   **Reorganized Debtor** shall mean Debtor as it will exist on and after the Effective Date of the Plan.

43.   **Schedules** shall mean the schedules of assets and liabilities and the statement of financial affairs filed by Debtor pursuant to Code § 521 and Bankruptcy Rules 1007 and 1009, including all amendments and supplements thereto as of the Confirmation Date.

44.   **Secured Claim** shall mean a Claim as to which the Claimant has purported to assert a validly perfected and enforceable lien or security interest pursuant to Code §§ 101 (37), (50) and (51) and that is secured in whole or in part by Estate Property. A Secured Claim shall only be such a Claim in an amount that does not exceed the value of the Estate Property securing such Claim and to the extent of the value of the lien, encumbrance or security interest of the holder of such Claim in such Estate Property, as determined in accordance with Code § 506. To the extent that the value of a Claimant's Secured Claim exceeds the value of the Estate Property subject to such

Claim, such Secured Claim shall be treated as an Unsecured Claim except to the extent such Creditor is entitled to make an election to receive the treatment set forth in Code § 1111(b)(2) and the Creditor so elects.

45.   **Secured Claimant** shall mean a Claimant that held, as of the Petition Date, a Secured Claim.

46.   **Secured Real Estate Tax Claim** shall mean a Claim for real estate taxes by a Governmental Unit secured by real estate owned by the Estate.

47.   **Unsecured Claim** shall mean a Claim other than (a) a Secured Claim**,** (b) an Administrative Expense Claim, (c) a Priority Claim, and (d) a Priority Tax Claim.

48.   **Unsecured Claimant** shall mean a Claimant that held, as of the Petition Date, an Unsecured Claim.

49.   **U.S. Trustee Fees** shall mean fees arising under 28 U.S.C. §1930(a)(6).

50.   **§** shall mean section.

**B.**   **Severability.** If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability or operative effect of any other provision of this Plan.

**C.**   **Binding Effect.** The rights and obligations of any entity named or referred to in this Plan will be binding upon and will inure to the benefit of the successors or assigns of such entity.

**D.**   **Applicable Law.** Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Missouri govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

**E.**   **Captions.** The headings contained in this Plan are for convenience of reference only and do not affect the meaning, construction, or interpretation of this Plan.

**ARTICLE III**
**BACKGROUND**

**A.**   **Debtor**

Debtor operates an ambulance service company headquartered in Staunton, Illinois. The business is a registered non-profit and specializes in the transport and treatment of patients en route to a hospital.

**B.**   **Events Leading to the Bankruptcy Case**

Debtor filed its bankruptcy case on November 21, 2022.  Debtor operates a nonprofit

business. Every year, Debtor receives a large tax refund due to its status as a nonprofit. Debtor takes on lines of credit during the year to maintain cash flow until the tax refund is disbursed, which Debtor uses to pay off its lines of credit. A recent lawsuit filed against Debtor has created difficulties and required additional cash flows to fund its legal defense.

The bankruptcy was caused due to the cyclical nature of Debtor's business. Debtor is now addressing its financial situation as a whole and Debtor felt that a Chapter 11 reorganization was the best business decision for their long-term future.

**B.** **Significant Events in the Bankruptcy Case, Restructuring**

Debtor has managed its financial affairs and taken steps to place themselves in a position to reorganize their debts pursuant to the terms of this Plan.

During the course of the Case, Debtor sought relief in the form of "first-day motions" to stabilize its affairs and also sought retention of professionals, including their legal counsel, Carmody MacDonald, P.C. The Honorable Bankruptcy Court herein granted the relief requested in Debtor's motions. Thereafter, Debtor attended the initial Debtor interview, prepared and filed its monthly operating reports, and attended the § 341 meeting of creditors.

No Creditors' committee was appointed in Debtor's Case and no adversary proceedings have been filed.

**C.** **Projected Recovery of Avoidable Transfers**

Debtor does not intend to pursue further preference, fraudulent transfer, or other avoidance actions.

    1. **Preferential Transfers**

        (a) *Actions Against Non-Insiders:* None.

        Debtor does not intend to pursue any further preferential transfer actions against non-insiders and does not believe any such cause of action exists.

        (b) *Actions Against Insiders:* None.

        Debtor does not intend to pursue any preferential transfer actions against insiders and does not believe any such cause of action exists.

    2. **Fraudulent Conveyances**

Debtor does not believe that any fraudulent conveyances were made and, therefore, does not intend to pursue any suits to recover transfers that occurred during the two years prior the Petition Date.

**D.** **Claims and Claims Objections**

The Bar Date for filing Proofs of Claim for Creditors, other than Creditors who are Governmental Units, was February 17th, 2023. The deadline for a Governmental Unit to file a Proof of Claim was June 7th , 2023.  The deadlines for filing an Administrative Expense Claim are set forth in Article IV, C of the Plan.

Debtor has scheduled Disputed Claims and undisputed Claims in the amount of $473,700.07 Secured, $0.00 Priority, and $0.00 General Unsecured.

The claims register in Debtor's Case reports the following Claims filed: $473,962.55 Secured, $0 Priority, and $2,261.52 General Unsecured.  Many Claims are filed for the same or similar amount as that scheduled by Debtor. This Plan resolves all Claims that have been filed.

Except to the extent that a Claim has been Allowed pursuant to a Final Order, Debtor reserves the right to object to Claims. Therefore, even if your Claim has not been objected to and/or is deemed "Allowed" for voting purposes, you may not be entitled to a Distribution if the Plan does not so provide and/or if an objection to your Claim is later upheld. The procedures for resolving Disputed Claims are stated in Article V of the Plan.

Objections to any Claims not otherwise settled or resolved through the Plan will be filed within thirty (30) days after the Effective Date of the Plan or such later date as is authorized by the Court.

**E.      Current and Historical Financial Conditions**

## ARTICLE IV
## THE PLAN OF REORGANIZATION AND
## TREATMENT OF CLAIMS AND
## INTERESTS

**A.      What is the Purpose of the Plan of Reorganization?**

As required by the Code, the Plan places Claims and interests in various Classes and describes the treatment that each Class will receive. The Plan also states whether each Class of Claims or interests is Impaired. If the Plan is confirmed, your recovery on a Claim, once such Claim is Allowed, will be limited to the amount provided by the Plan. Distributions will only be made on and to the extent that a Claim is Allowed.

**B.      Explanation of Classes of Claims and Equity Interests.**

1.      **Classes of Secured Claims.** Allowed Secured Claims are Claims secured by Estate Property to the extent Allowed as Secured Claims under Code § 506. If the value of the collateral securing the Creditor's Claim is less than the amount of the Creditor's Allowed Claim, the deficiency will be classified as an Unsecured Claim unless the Creditor is entitled to elect to receive the treatment set forth in Code § 1111 (b)(2) and the Creditor so elects.

2. **Classes of Priority Claims.** Claims that are referred to in Code § 507(a), other than Claims of a kind specified in Code §§ 507(a)(2), 507(a)(3), or 507(a)(8) are required to be placed in Classes.

3. **Classes of Unsecured Claims.** Unsecured Claims are not secured by Estate Property and are not entitled to priority under the Code § 507(a).

**C.    Unclassified Claims.**

Certain types of Claims are automatically entitled to specific treatment under the Code. They are not considered Impaired, and holders of such Claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code. As such, Debtor has *not* placed the following Claims in any class:

1. **Administrative Expenses,** Administrative Expense Claims are costs or expenses of administering Debtor's Chapter 11 Case which are Allowed under Code § 507(a)(2). Administrative Expense Claims include the value of any goods sold to Debtor in the ordinary course of business and received within twenty days before the date of the bankruptcy petition. Administrative Expense Claims in the Case will consist of (i) professional fees, (ii) Court costs, (iii) pre-confirmation United States Trustees' fees, and (iv) any unpaid post-petition expenses. Debtor estimates that the Administrative Expense Claims required to be paid on the Effective Date of the Plan or otherwise resolved with the respective Administrative Claimant will be approximately $28,000.00

Administrative Expense Claims will be paid in full upon the Effective Date to the extent such Claims are Allowed Administrative Expense Claims on that date, except with respect to Claimants who elect to receive different treatment and/or Claimants whose Administrative Expense Claims were incurred by Debtor in the ordinary course of business. An Administrative Expense Creditor agreeing not to be paid on the Effective Date will be paid on a schedule agreeable to such Creditor and Debtor, after such Administrative Expense Claim is Allowed. Such Claims will be paid by Debtor in the ordinary course of business consistent with past practice and in accordance with the terms and subject to the conditions of any orders or agreements governing, instruments evidencing, or other documents relating to such transactions,

Administrative Expense Claims that are not Allowed Administrative Expense Claims as of the Effective Date will be paid on or before thirty days after they are Allowed, unless deferred payment arrangements have been made or such Claim is a liability incurred in the ordinary course of business. In the event that an Administrative Expense Claim is a Disputed Claim on the Effective Date, sufficient funds shall be reserved by Debtor to pay such Administrative Expense Claim in full upon its allowance, unless deferred payment arrangements have been made. Notwithstanding the foregoing, United States Trustee fees and Bankruptcy Court costs shall be paid fully current on or before the Effective Date.

**Administrative Claims Bar Date.** Any Claimants or Creditors seeking an Allowed Administrative Expense Claim, other than professionals employed in this Case pursuant to order of the Bankruptcy Court, must file their application for an Administrative

Expense Claim on or before thirty (30) days after the Effective Date or otherwise be barred from asserting any Administrative Expense Claim in this matter. Within five days after the Effective Date, Debtor shall serve notice of the Bar Date for Administrative Expense Claims on all known parties asserting Administrative Expense Claims.

**Professional Fees.** Any professionals employed in this Case pursuant to order of the Bankruptcy Court must file their applications for Allowed Administrative Expense Claims for periods through and including the Effective Date on or before sixty days after the Effective Date or otherwise be barred from asserting any Administrative Expense Claim in this matter. Professionals holding prepetition retainers from Debtor shall apply such retainers to any pre-confirmation fees accrued but unpaid as of the Effective Date, subject to final approval by and accounting to the Bankruptcy Court of such fees.

2.    **United States Trustee Fees.** Debtor shall pay post-confirmation United States Trustee fees pursuant to 28 U.S.C. § 1930(a)(6) until the Case is converted, dismissed or closed. Moreover, Debtor shall provide the United States Trustee with and file with the Court post-confirmation reports substantially in the format required by the United States Trustee until Debtor are no longer required to pay fees pursuant to 28 U.S.C. § 1930.

3.    **Allowed 11 U.S.C. §507(a)(8) Priority Claims.** Unsecured Priority Tax Claims are Claims for unsecured income, employment, and other taxes described by Code § 507(a)(8). Unless the holder of such an Unsecured Priority Tax Claim agrees otherwise, it must receive the present value of its Claim, in regular installments paid over a period not exceeding five years from the Petition Date.

Except to the extent that the holder of an Allowed Unsecured Priority Tax Claim agrees to less favorable treatment, each holder of an Allowed Priority Tax Claim shall receive deferred quarterly Cash payments following the Effective Date over a period no longer than five years after the Petition Date, beginning on the later of the first day of the first calendar quarter following the Effective Date or thirty days after the Unsecured Priority Tax Claim is Allowed and continuing thereafter on the first day of each calendar quarter until the Allowed Unsecured Priority Tax Claim is paid in full with interest at the statutory rate (currently, 4% per annum compounded daily for the Internal Revenue Service).

**D.    Treatment of Classified Claims.**

All Claims and Interests, other than the unclassified Claims described above, are placed in the Classes described herein. A Claim is classified in a particular Class only to the extent that the Claim qualifies within the description of that Class and may be classified in another Class to the extent that any portion or remainder of the Claim qualifies within the description of such other class. A Claim is placed in a particular Class for purposes of receiving Distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim in that Class and such Claim has not been paid, released, or otherwise satisfied.

| Class | Designation | Impairment | Entitled to Vote |
|-------|-------------|------------|------------------|
| Class 1 | Priority Non-Tax Claims | Unimpaired | No |

| Class 2 | Bank of Springfield Secured Claims | Impaired | Yes |
|---------|-----------------------------------|----------|-----|
| Class 3 | General Unsecured Claims | Impaired | Yes |
| Class 4 | Allowed Interests | Unimpaired | Deemed to Accept |

1. **Class 1 – Priority Non-Tax Claims**

Debtor is not aware of any unpaid Class 1 Claims. In the event that Priority Non-Tax Claims are filed and Allowed in the Case and remain unpaid on the Effective Date, such Claims will be treated as provided herein.

(a) <u>Treatment</u>: Except to the extent that a holder of an Allowed Priority Non-Tax Claim agrees to less favorable treatment on account of such Claim and/or to the extent that such Priority Claim has been paid in full on or before the Effective Date, the holder of such Allowed Priority Non-Tax Claim shall receive Cash in an amount equal to such Claim on the Effective Date.

Debtor estimates that the monthly Plan Payment for Class 1 Priority Non-Tax Claims is $0.00.

(b) <u>Voting</u>: The Allowed Priority Non-Tax Claims are not Impaired, and the holders of such Claims, if any, are not entitled to vote to accept or reject the Plan on account of such Claim.

2. **Class 2 - Secured Claims of Bank of Springfield**

(a) <u>Treatment</u>: Bank of Springfield is a Secured Claimant holding a senior lien on the Bank of Springfield Collateral. Bank of Springfield's Secured Claim is allowed in the amount of $473,700.07 less any and all payments made by Debtor to Bank of Springfield after the Petition Date.

The liens of Bank of Springfield shall continue unimpaired. Debtor will continue to make monthly payments to Bank of Springfield in accordance with their prepetition loan documents and any modifications made post-petition pursuant to this Court's order, with the exception of the Bank of Springfield Capital Loan, which is modified as described below.

The Bank of Springfield Capital Loan shall be amortized over a five-year period at the prime rate plus 1%. Debtors shall make monthly payments of principal and interest on the Bank of Springfield Capital Loan for five years after the Effective Date of the Plan until it is paid in full.

(b) <u>Voting</u>: Bank of Springfield's Allowed Secured Claim is Impaired and the holders thereof are entitled to vote on the Plan.

3. **Class 3 –General Unsecured Claims**

(a)     <u>Treatment</u>: Unsecured Claims are not secured by Estate Property and are not entitled to priority under Code § 507(a). If the amount of Allowed Unsecured Claims remains at $2,261.52, the holders of Allowed Unsecured Claims shall be paid in full within one (1) year of the Effective Date of the Plan. If the amount of Allowed Unsecured Claims exceeds $2,261.52, the holders of Allowed Unsecured Claims shall be paid in full within five (5) years of the Effective Date of the Plan.

(b)     <u>Voting</u>: General Unsecured Claims in Class 3 are Impaired, and the holders thereof are entitled to vote to accept or reject the Plan.

6.    **Class 4- Allowed Interests**

(a)     <u>Treatment</u>: Class 4 consists of all Allowed Interests in Debtor. All Class 4 Allowed Interests will be retained on the Effective Date and therefore are unimpaired under the Plan.

(b)     <u>Voting</u>: Class 4 is deemed to have accepted the Plan, and therefore is not entitled to vote.

## ARTICLE V
## <u>ALLOWANCE AND DISALLOWANCE OF CLAIMS</u>

A.    **Disputed Claim.** A Disputed Claim is a Claim that has not been Allowed or disallowed by a Final Order, and as to which either: (i) a Proof of Claim has been filed or deemed filed, and Debtor or another party in interest has filed an objection; or (ii) no Proof of Claim has been filed, and Debtor have scheduled such Claim as disputed, contingent, or unliquidated on the rejection of a contract or lease. Disputed Claims will be barred if the Proof of Claim is not timely filed, unless the Bankruptcy Court orders otherwise.

1.    **Deadline to Object to Rejection.** If you object to the rejection of your contract or lease, you must file and serve your objection to the Plan within the deadline for objecting to confirmation of the Plan provided in Article I.

## ARTICLE VII
## <u>MEANS FOR IMPLEMENTATION OF THE PLAN</u>

A.    **Source of Payments.** All of Debtor's future income will be used to fund the Plan.

B.    **Procedure for Payment of Claims**.  The Reorganized Debtor shall establish a bank account at an FDIC insured institution.  Debtor will fund the Distribution Account on or before the 20th day of each month. Debtor and Debtor's accountant shall be authorized to write checks from the Distribution Account.  On the last day of the third

full month after the Effective Date and every 90 days thereafter, Debtor or Debtor's accountant shall mail a pro-rata Distribution to creditors holding Allowed Claims.

**C.**     **Disputed Claims Deposit**.   The Reorganized Debtor shall deposit funds in the Distribution Account equal to the amount the payments which would have been made to such Creditor had the Creditor's Claim been Allowed on the Effective Date and shall reserve said funds until such time as the Disputed Claim shall become an Allowed Claim, the Reorganized Debtor shall release the reserved funds to such Creditor and pay the remaining Allowed Claim of said Creditor pursuant to paragraph B above. Upon the entry of a Final Order disallowing any Disputed Claim, the holder of said Claim shall immediately forfeit any claim, right, title, or interest in any distributions under this Plan and the Reorganized Debtor shall treat any reserved funds as Cash and distribute same pursuant to paragraph B above.

**D.**     **Post-Confirmation Business Operations.** Debtor will continue to operate its business as the Reorganized Debtor.

**E.**     **Risk Factors.** The primary risks under the Plan are that the income from Reorganized Debtor's business operations will not meet current projections and will be insufficient to fund Debtor's obligations under the Plan. In such case, the Reorganized Debtor anticipates that it will reduce expenses, where possible, to meet its obligations under the Plan.

**F.**     **Feasibility.**   Based upon Debtor's historical income and projected future income, the repayment proposed is reasonable. Estimated Plan Projections are included as **Exhibit A** to the Plan.

**G.**     **Tax Consequences of Plan.** Debtor is not aware of any adverse tax consequences that will result from confirmation of the Plan.   Creditors and equity interest holders concerned with how the Plan may affect their tax liability should consult with their accountants, attorneys, or advisors.

**H.**     **Unexpired Leases.**   On the Effective Date, the Reorganized Debtor shall assume all executory contracts and unexpired leases that have not previously been rejected. Upon written request, and prior to confirmation of the Plan, Debtor will provide written confirmation to any non-Debtor party with a contract or lease being treated and assumed under this section that the non-Debtor party's contract or lease is being treated and assumed under this section of the Plan.

**I.**     **Delivery of Distributions and Undeliverable Distributions.** Distributions to holders of Allowed Claims shall be made at the address of each such holders as set forth on the Schedules, filed with the Bankruptcy Court, unless superseded by a new address as set forth (a) on a proof of claim filed by a holder of an Allowed Claim, or (b) in another writing notifying the Bankruptcy Court or Reorganized Debtor of a change of address. If any holder's distribution is returned as undeliverable, no further distributions to such holder shall be made unless and until the Reorganized Debtor is notified of such holder's then-current address, at which time all missed distributions shall be made to such holder, without interest. If a distribution cannot be made within one hundred and eighty-two days after the date such undeliverable distribution was made, any such

holder's Claim shall be expunged and the funds otherwise distributable on such Claim shall be retained and/or relinquished to the Reorganized Debtor.

**J.**    **Defaults.**  Upon the event of default related to any or all of the Reorganized Debtor's payment obligation or other obligations under the Plan, any Creditor shall first provide Reorganized Debtor's counsel with a notice to cure, giving the Debtor ten (10) business days to cure the default. In the event that said default is not so cured then the Creditor shall be permitted to accelerate the amounts due and owing under their Allowed Claim and pursue their rights and remedies against the Reorganized Debtor under applicable State law.

### ARTICLE VIII
### CONFIRMATION REQUIREMENTS AND PROCEDURES

**A.**    **Overview of Requirements.** To be confirmable, the Plan must meet the requirements listed in Code §§ 1129(a) or (b). These include the requirements that (1) the Plan must be proposed in good faith; (2) at least one Impaired Class of Claims must accept the Plan, without counting votes of insiders; (3) the Plan must distribute to each Creditor at least as much as the Creditor would receive in a Chapter 7 liquidation case, unless the Creditor votes to accept the Plan; and (4) the Plan must be feasible. These requirements are not the only requirements listed in Code § 1129, and they are not the only requirements for confirmation.

**B.**    **Who May Vote or Object.** Any party in interest may object to the confirmation of the Plan if the party believes that the requirements for confirmation are not met. Many parties in interest, however, are not entitled to vote to accept or reject the Plan. A Creditor has a right to vote for or against the Plan only if that Creditor has a Claim that is both (1) Allowed or Allowed for voting purposes and (2) included in an Impaired Class that will retain value under the Plan.

**C.**    **What Is an Allowed Claim?** Only a Creditor with an Allowed Claim has the right to vote on the Plan. Generally, a Claim is Allowed if either (1) Debtor have scheduled the Claim on the Schedules, unless the Claim has been scheduled as a disputed, contingent, or unliquidated, or (2) the Creditor has filed a Proof of Claim, unless an objection has been filed to such Proof of Claim. When a Claim is not Allowed, the Creditor holding the Claim cannot vote unless the Court overrules the objection or allows the Claim for voting purposes under Bankruptcy Rule 3018(a).

**D.**    **What Does Impaired Mean?** As noted above, the holder of an Allowed Claim has the right to vote only if it is in a Class that is Impaired under the Plan. "Impaired" means the Plan alters the legal, equitable, or contractual rights of the members of that Class.

**E.**    **Who is Not Entitled to Vote.** The following types of Creditors are not entitled to vote:

1.    Holders of Claims that have been disallowed by an order of the Court;

2.      Holders of other Claims that are not "Allowed Claims," unless they have been "Allowed" for voting purposes;

3.      Holders of Claims in Classes that are not Impaired;

4.      Holders of Unsecured Claims entitled to priority pursuant to Code §§ 507(a)(2), (a)(3), and (a)(8);

5.      Holders of Claims in Classes that do not receive or retain any value under the Plan;

6.      Holders of Administrative Expense Claims.

<u>Even if you are not entitled to vote on the Plan, you have a right to object to the confirmation of the Plan.</u>

**F.      Who Can Vote in More Than One Class.** A Creditor whose Claim has been Allowed in part as a Secured Claim and in part as an Unsecured Claim, or who otherwise hold Claims in multiple Classes, is entitled to accept or reject a Plan in each capacity, and should cast one Ballot for each Claim.

**G.      Votes Necessary to Confirm the Plan.** If Impaired Classes exist, the Court cannot confirm the Plan unless (1) at least one Impaired Class of Creditors has accepted the Plan without counting the votes of any insiders within that Class, or (2) all Impaired Classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cram down" on non-accepting Classes, as discussed below.

1.      **Votes Necessary for a Class to Accept the Plan.** A Class of Claims accepts the Plan if both of the following occur: (1) the holders of more than one-half of the Allowed Claims in the Class, who vote, cast their votes to accept the Plan, and (2) the holders of at least two-thirds in dollar amount of the Allowed Claims in the Class, who vote, cast their votes to accept the Plan.

2.      **Treatment of Nonaccepting Classes.** Even if one or more Impaired Classes reject the Plan, the Court may nonetheless confirm the Plan if the nonaccepting Classes are treated in the manner prescribed by Code § 1129(b), A plan that binds nonaccepting Classes is commonly referred to as a "cram down" plan, The Code allows the Plan to bind nonaccepting Classes of Claims or equity interests if it meets all the requirements for consensual confirmation except the voting requirements of Code § 1129(a)(8), does not "discriminate unfairly," and is "fair and equitable" toward each Impaired Class that has not voted to accept the Plan, **DEBTOR RESERVES ITS RIGHT TO REQUEST THE BANKRUPTCY COURT TO CONFIRM THE PLAN PURSUANT TO CODE § 1129(B) AND TO AUTOMATICALLY CAUSE SUCH MODIFICATION OF THE PLAN AS IS NECESSARY TO ENABLE THE PLAN TO PROVIDE TREATMENT OF CLAIMS TO SATISFY THE REQUIREMENTS OF CODE § 1129(B). YOU SHOULD CONSULT YOUR OWN ATTORNEY IF A "CRAMDOWN" CONFIRMATION WILL AFFECT YOUR CLAIM, AS THE VARIATIONS ON THIS GENERAL RULE ARE NUMEROUS AND COMPLEX.**

H.    **Liquidation Analysis.** To confirm the Plan, the Court must find that all Creditors who do not accept the Plan will receive at least as much under the Plan as such Claim and equity interest holders would receive in a Chapter 7 liquidation. A liquidation analysis is included in **Exhibit B** to the Plan. Debtor believes that the analysis in **Exhibit B** provides an estimate of the most that Creditors conceivably could receive after liquidation in a Chapter 7. Creditors should keep in mind that liquidation in Chapter 7 would involve fees, expenses and costs that will not have to be paid under this Plan including, without limitation, (a) sales commissions on assets, estimated to be approximately seven to fifteen percent of the gross sales price, (b) fees for a Chapter 7 Trustee as described in Code § 326, and (c) fees for a Chapter 7 Trustee's attorney and other professionals.

Debtor believe Creditors will receive more under the Plan than they otherwise would if Debtor's assets were liquidated and the proceeds distributed to Creditors. Debtor believe that Creditors holding Allowed Administrative Expense Claims, Priority Claims, and Unsecured Claims would receive nothing upon liquidation.

I.    **Ability to Fund Plan and Operate without Further Reorganization.** The Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of Debtor or any successor to Debtor, unless such liquidation or reorganization is proposed in the Plan. Debtor believe that they have enough Cash on hand to pay all the Claims and expenses that are entitled to be paid on or within thirty days of the Effective Date, with the exception of the professional fees of Carmody MacDonald, P.C. Debtor also must show that they will have enough Cash over the life of the Plan to make the required Plan payments.

1.    **General Unsecured Claims.** Debtor anticipate that they will have sufficient income from their business to fund Debtor's Plan obligations to General Unsecured Claims.

2.    **Administrative Expense.** With the exception of the legal fees of Carmody MacDonald, P.C., who will agree that Debtor can pay its Claim over time, Debtor believe that they have enough Cash on hand to pay costs of administration as provided for in the Plan. Once Allowed, Debtor will pay Carmody MacDonald, P.C. the balance of its fees on or after the Effective Date on such terms as are acceptable to Carmody MacDonald, P.C.

3.    **Secured Claims.** Debtor anticipate they will have sufficient funds from the operation of their business to fund Allowed Secured Claims.

4.    **Priority and Secured Tax Claims.** Debtor anticipate they will have sufficient funds from the operation of their business to fund Allowed Priority and Secured Tax Claims.

## ARTICLE IX
### DISCHARGE AND OTHER EFFECTS OF CONFIRMATION

**DISCHARGE. UPON THE EFFECTIVE DATE OF THE PLAN, DEBTOR, THE REORGANIZED DEBTOR, AND ITS ESTATE, AND ALL OF THEIR PROPERTY, WILL RECEIVE A DISCHARGE OF AND RELEASE FROM ALL ANY AND ALL**

**CLAIMS, LIENS, DEBTS, SECURITY INTERESTS, ENCUMBRANCES, AND INTERESTS THAT AROSE BEFORE THE CONFIRMATION DATE, INCLUDING, BUT NOT LIMITED TO, ALL PRINCIPAL AND ANY INTEREST ACCRUED THEREON, WHETHER OR NOT THE CREDITOR FILES A PROOF OF CLAIM, ACCEPTS THIS PLAN, OR HAS ITS CLAIM ALLOWED, EXCEPT AS PROVIDED IN CODE § 1141. SUCH DISCHARGE WILL NOT DISCHARGE DEBTOR FROM ANY DEBTS THAT ARE NON-DISCHARGEABLE UNDER CODE § 523, EXCEPT AS PROVIDED IN RULE 4007(C) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE. UNDER CERTAIN CONDITIONS, DEBTOR MAY BE GRANTED A DISCHARGE EVEN IF ALL PLAN PAYMENTS TO BE MADE UNDER THE PLAN DURING THE PLAN PERIOD ARE NOT COMPLETED. SUBJECT TO THE PROVISIONS OF THIS ARTICLE, THE PAYMENTS AND DISTRIBUTIONS MADE UNDER THIS PLAN SHALL BE IN EXCHANGE FOR AND IN COMPLETE SATISFACTION, DISCHARGE, AND RELEASE OF ALL CLAIMS AGAINST DEBTOR AND THE REORGANIZED DEBTOR, AND ANY OF THEIR RESPECTIVE ASSETS OR PROPERTY, INCLUDING ANY CLAIM FOR INTEREST ACCRUING AFTER THE PETITION DATE AND PRIOR TO THE EFFECTIVE DATE. ON AND AFTER THE EFFECTIVE DATE, EXCEPT AS EXPRESSLY PROVIDED IN THE PLAN, ALL HOLDERS OF CLAIMS ARISING PRIOR TO THE CONFIRMATION DATE SHALL, TO THE FULLEST EXTENT POSSIBLE UNDER APPLICABLE LAW, BE PERMANENTLY BARRED AND ENJOINED FROM ASSERTING AGAINST THE REORGANIZED DEBTOR OR THEIR ASSETS OR PROPERTY ANY OTHER OR FURTHER CLAIMS, INCLUDING CLAIMS BASED ON ANY ACT OR OMISSION, TRANSACTIONS OR OTHER ACTIVITY OF ANY KIND OR NATURE THAT OCCURRED PRIOR TO THE CONFIRMATION DATE.**

**A.**    **Operation of Confirmation Order.** Pursuant to Code § 1142(b), the Confirmation Order shall operate as an order of the Court directing Debtor, the Reorganized Debtor, and any other necessary parties, to execute and deliver, or join in the execution and delivery of any instrument required to effect a transfer of the Estate Property, and to perform any other act that is necessary for the consummation of this Plan.

**B.**    **Vesting of Property.** On the Effective Date, all Estate Property will vest in the Reorganized Debtor pursuant to Code § 1141(b), free and clear of all Claims and interests except as provided in the Plan.  Should this Chapter 11 Case convert to a case under Chapter 7 following confirmation, but before substantial consummation of the Plan, all property of the Chapter 11 estate shall revest in the Chapter 7 estate.

**D.**    **Binding Effect of Plan / Plan Creates New Obligations.** The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity. The payments provided for in this Plan constitute new contractual obligations that replace those obligations to Creditors that existed prior to the Confirmation Date. On and after the Confirmation Date, the provisions of this Plan shall bind Debtor, the Reorganized Debtor, and all Creditors (whether they have accepted this Plan or not) and the respective heirs, executors, administrators, successors or assigns, if any, of any of the foregoing.

**E.**    **Modification of Plan.** Debtor may modify the Plan at any time before confirmation of the Plan. However, the Court may require a new or additional disclosures to Creditors

and/or revoting on the Plan. Upon request of Debtor, the United States Trustee, or the holder of any Allowed Unsecured Claim, the Plan may be modified at any time after confirmation of the Plan but before the completion of payments under the Plan, to (1) increase or reduce the amount of payments under the Plan on Claims of a particular class; (2) extend or reduce the time period for such payments; or (3) alter the amount of Distribution to a Creditor whose Claim is provided for by the Plan to the extent necessary to take account of any payment of the Claim made other than under the Plan.

F.    **Retention of Jurisdiction.**    The Bankruptcy Court shall retain jurisdiction of this Case pursuant to the provisions of Chapter 11 of the Bankruptcy Code, until the entry of a final decree closing the Estate, and with respect to the following matters:

1.    To preserve and enable Debtor to consummate any and all proceedings brought or to commence any action to set aside liens or encumbrances and to recover any transfers, assets or damages to which Debtor may be entitled to under applicable provisions of the Bankruptcy Code, including without limitation, Code §§ 544, 545, 547, 548, 549, and 553(b), or other federal, state or local laws;

2.    To adjudicate, hear and determine all controversies concerning the amount, Classification and priority of all Claims against or interest in Debtor and to reexamine any Claims or interests which may have been Allowed including, without limitation, to hear and determine all Claims arising from the rejection of any executory contracts or unexpired leases. The failure by Debtor or any party in interest initially to object or to examine any Claims or interests shall not be deemed to be a waiver of their rights to object to, or cause to be reexamined, any such Claim, in whole or in part;

3.    To liquidate damages in connection with any disputed, contingent or unliquidated Claims;

4.    To adjudicate all Claims to a security or ownership interest in any Estate Property or property of Debtor or in any proceeds thereof, and to resolve any and all disputes involving any Claims;

5.    To conduct hearings on valuation, as necessary, and to determine whether any party-in-interest is entitled to recover against any Person any Claim, whether arising under Chapter 5 of the Bankruptcy Code, state law, out of a voidable preference, out of a fraudulent transfer or otherwise, whether such voidable transfer occurred prior to or after the Petition Date;

6.    To adjudicate all Claims or controversies arising out of any purchase, sale or contract made or undertaken by Debtor during the pendency of this Case;

7.    To hear and determine any and all pending adversary proceedings or contested matters;

8.      To enforce any judgment entered or settlement approved by the Bankruptcy Court;

9.      To recover all assets and properties of Debtor wherever located;

10.     To hear and determine all applications for compensation of professionals and other Administrative Expenses;

11.     To adjudicate all Claims of Debtor against third parties, to the extent the Court has authority to maintain jurisdiction over said Claims;

12.     To determine all matters, controversies, and disputes arising under or in connection with this Plan, the application or disposition of Estate Property, and/or determine any modification of the Plan after Confirmation;

13.     To determine such other matters as may be provided for in this Plan and the order of Confirmation and for the purposes set forth in Code § 1127(b);

14.     To make such orders as are necessary or appropriate to establish and enforce the rights and powers of the Reorganized Debtor under the confirmed Plan or to carry out the provisions of this Plan, including, but not limited to orders interpreting, clarifying or enforcing the provisions thereof; and

15.   To enter a final decree pursuant to Rule 3022 of the Bankruptcy Rules.

G.      **Final Decree.**  Once the Estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, Debtor shall file a motion with the Court to obtain a final decree to close the Case. Alternatively, the Court may enter such a final decree on its own motion.

## ARTICLE X
## REQUEST FOR CONFIRMATION

The Debtor believe that confirmation and implementation of this Plan is preferable to dismissal of the case or conversion of the case to Chapter 7 because it will provide the greater recovery to unsecured creditors, while at the same time reducing the costs and expenses necessary to pay such Claims.  The Debtor urge all creditors to accept this Plan and to evidence such acceptance by returning their ballots to the undersigned on or before 5:00 p.m., Central Daylight Time, on _____.

## REQUEST FOR CONFIRMATION

The Debtor believe that confirmation and implementation of this Plan is preferable to dismissal of the case or conversion of the case to Chapter 7 because it will provide the greater recovery to unsecured creditors, while at the same time reducing the costs and expenses necessary to pay such Claims. The Debtor urge all creditors to accept this Plan and to evidence such acceptance by returning their ballots to the undersigned on or before 5:00 p.m., Central Daylight Time, on _7-19-2023_ .


_____

Dean Devries, President


Respectfully submitted,

By: _/s/ Robert E. Eggmann_
One of their Attorneys


Robert E. Eggmann, Illinois Bar #6203021
Thomas H. Riske, Illinois Bar #6301953
Carmody MacDonald P.C.
120 South Central Ave., Suite 1800
Clayton, MO 63105
314-854-8600 (Telephone)
314-854-8660 (Fax)
ree@carmodymacdonald.com (Email)
thr@carmodymacdonald.com (Email)
ATTORNEYS FOR DEBTOR